DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| MATRIX FINANCIAL SERVICES CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CONRAD S. LAURENT, a single man, | ) ) |
| Defendant. | ) ) ) |

Civil Action No. 2014-0069

**Attorneys:**
**A.J. Stone, III, Esq.,**
St. Thomas, U.S.V.I.
   *For Plaintiff*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Default Judgment" filed by Plaintiff, Matrix Financial Services Corporation ("Matrix") on September 22, 2015 against Defendant Conrad S. Laurent ("Laurent"). (Dkt. No. 16). For the reasons discussed below, the Court will grant Plaintiff's Motion for Default Judgment.

### I. BACKGROUND

On September 26, 2014, Matrix filed a Complaint against Laurent, alleging causes of action for debt and foreclosure of real property mortgage. (Dkt. No. 1). Matrix asserted that Laurent was the titleholder of record to real property ("the Property"), described in the Warranty Deed as:

> Plot No. 86, Estate Boetzberg, (Tide Village) East End Quarter "A", consisting of 0.2506 U.S. acres, more or less, as more fully shown on O.L.G. Drawing No. 1229-A, dated June 8, 1962, revised November 4, 1999.

(Dkt. No. 17-1). The Complaint alleges that, on May 11, 2009, Laurent executed and delivered to Allied Home Mortgage Corporation ("Allied") a promissory note (the "Note"), promising to pay

the principal amount of $189,636.00, together with interest at a rate of 4.875% per annum, in consecutive monthly installments of $1,003.57 beginning July 1, 2009. (Dkt. No. 1, ¶¶ 6-7). To secure payment of the Note, Laurent granted to Allied and Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Allied and its successors and assigns, a first priority mortgage dated May 11, 2009 over the Property (the "Mortgage"). *Id.* ¶ 9. The Mortgage provided that Laurent would make the payments due under the Note. *Id.*, ¶ 10.

The Complaint goes on to say that, on or about February 1, 2014, Laurent defaulted under the terms and conditions of the Note in that monthly installments of principal and interest became due and were not paid, and he also defaulted under the terms and conditions of the Mortgage because principal, interest, and other charges became due and were not paid. *Id.* ¶¶ 13, 14. Matrix gave notice of default to Laurent on March 18, 2014, advising him that failure to cure the default would result in acceleration of the debt and foreclosure of the Mortgage; however, the default had not been cured as of the date that the Complaint was filed. *Id.* ¶¶ 15, 16. Matrix elected to accelerate the loan, such that the entire principal sum with unpaid accrued interest, advances, expenses, fees, costs, and late charges would become immediately due and payable. *Id.*, ¶¶ 17, 18. On June 26, 2014, MERS, for itself and as nominee for Allied, assigned its entire interest in the Property to Matrix. *Id.* ¶ 24.

Matrix claims that it is entitled to collect all sums due under the Note from Laurent and is entitled to be reimbursed for any insurance premiums, taxes, or other charges it may pay with respect to the Property under the terms of the Mortgage; and that under the terms of the Note and Mortgage, it is entitled to be reimbursed for reasonable attorney's fees and other expenses it has incurred to enforce payment on the Note or incidental to foreclosure on the Property. *Id.* ¶¶ 19-21. The Complaint also provides that Matrix is entitled to enforce the Mortgage that is the subject of this action; that Laurent is in default under the terms and conditions of the Mortgage for failure to

make timely payments when due; and that Matrix is entitled to foreclose its lien on the Property, sell the Property to satisfy the Note, and recover any deficiency from Laurent. *Id.*, ¶¶ 25-27.

Laurent was personally served with a copy of the Summons and Complaint on October 16, 2014. (Dkt. Nos. 8-1; Dkt. No. 11-1). He has neither answered the Complaint nor appeared in this action. On February 3, 2015, Matrix filed an Application for Entry of Default against Laurent. (Dkt. No. 9). The Clerk of Court entered default against him on February 9, 2015. (Dkt. No. 12).

On September 22, 2015, Matrix filed the instant Motion for Default Judgment (Dkt. No. 16), along with a Memorandum in Support (Dkt. No. 17); an Affidavit that explains and documents the indebtedness (Dkt. No. 18 and attachments); and a Declaration of Counsel in Support of Costs and Attorney's Fees. (Dkt. No. 19).

In its Memorandum, Matrix states that the procedural elements for default judgment against Laurent have been met. (Dkt. No. 17) Matrix properly served Laurent with copies of the Summons and Complaint, and the Clerk of Court entered default against him for failing to answer, plead, or otherwise defend this matter. *Id.* at 7. Matrix attached as an exhibit to its Memorandum a Status Report from the Department of Defendant Manpower Data Center, which showed that Laurent is not an active duty member of the military service. (Dkt. No. 17-3).

Matrix further contends that the pleadings in this action provide a sufficient basis for entry of default judgment on the merits of its claims, as the documentation shows that: title to the Property is held by Laurent, who executed the Note and the accompanying Mortgage; Matrix has possession of the Note and is holder of the Mortgage in its own right and by way of the MERS assignment; Laurent has defaulted under the terms of both the Note and the Mortgage; Matrix gave Laurent proper notice of the default, but he failed to cure the default; and Matrix elected to accelerate the amounts due and owing upon default, and foreclose on the Property. *Id.* at 8. Matrix asserts that it has demonstrated its entitlement to default judgment under the factors set forth in

*Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). *Id.* at 9-12. Finally, Matrix argues that it is entitled to an award of costs and attorney's fees incurred in the prosecution of this action. *Id.* at 12-17.

In support of its Motion, Plaintiff filed an Affidavit, signed by Andrea Bilek, Loan Administration Analyst for Flagstar Bank, FSB, Attorney-in-Fact for Matrix, who explained that she has personal knowledge of the information contained in the Affidavit and can confirm the accuracy of the information contained therein. (Dkt. No. 18, ¶ 2). She also explained how the document management system keeps track, and maintains business records, of transactions related to the Mortgage and Note as part of its regularly conducted business activity. *Id.*, ¶¶ 5, 8. The Affidavit sets forth the amounts due and owing through August 1, 2015: $175,066.51 in unpaid principal balance; interest from January 1, 2014 through August 1, 2015 of $13,512.99; escrow advances of $6,731.31 consisting of hazard insurance, flood insurance, property taxes; late charges of $378.33; property inspections and other property preservation fees of $210.00; for a total indebtedness of $195,898.96. *Id.* ¶¶ 10-13. Ms. Bilek asserts that interest accrues at the monthly rate of $711.21. *Id.* ¶ 14. Ms. Bilek's Affidavit is supported by numerous documents attesting to the veracity of those figures. (Dkt. Nos. 18-1 through 18-7). She also states that the security instruments provide that reasonable attorney's fees and costs may be awarded in addition to the previously-mentioned amounts. *Id.* ¶ 15.

On May 2, 2016, Matrix filed an Affidavit of Competency, signed by the process server, Antonio Messer, who personally served Laurent with the Summons and Complaint in this action on January 10, 2015. (Dkt. No. 21-1). Mr. Messer averred that Laurent was an adult, and that, at the time Laurent was served, he "appeared mentally competent and was properly identified to be the person mentioned and described in said process." *Id.*

## II. APPLICABLE LEGAL PRINCIPLES

In a motion for default judgment, "'the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant for purposes of a default judgment.'" *Star Pacific Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 231 (3d Cir. 2014) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Catanzaro v. Fischer,* 570 F. App'x 162, 165 (3d Cir. 2014); *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951). In the context of a grant of default judgment pursuant to Federal Rule of Civil Procedure 55, "'[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Star Pacific Corp.,* 574 F. App'x at 231 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

A motion for default judgment must contain evidence, by affidavits and/or documents, of the following:

> (1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the [Servicemembers] Civil Relief Act.

*Bank of Nova Scotia v. Abdallah,* 2013 WL 5312399, at *5 (D.V.I. Sept. 23, 2013) (quoting *Idewu v. Sealey*, 2012 U.S. Dist. LEXIS 36783, at *6 (D.V.I. Mar. 19, 2012)); *see also* Fed. R. Civ. P. 55(b); *Island Yacht Charters, Inc. v. Malgaglio,* 2009 WL 1507406, at *1 (D.V.I. May 28, 2009). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears

to have a litigable defense, and (3) whether defendant's delay is due to [defendant's] culpable conduct." *Chamberlain*, 210 F.3d at 164 (citing *United States v. $55,518.05 in U.S. Currency*, 528 F.2d 192, 195 (3d Cir. 1984)).

### III.   ANALYSIS

**A. Default Judgment**

Matrix has satisfied all of the requirements necessary to obtain a default judgment against Laurent. It has shown that Laurent was properly served (Dkt. Nos. 8, 11); he has not appeared; and default was entered against him by the Clerk of Court (Dkt. No. 12). Further, in the Affidavit of Competency, Mr. Messer, the process server, averred that Laurent was an adult and appeared mentally competent at the time of service. (Dkt. No. 21-1, ¶¶ 4, 5). In addition, Matrix provided a copy of a Status Report from the Department of Defense Manpower Data Center showing that Laurent is not on active duty in the military service as defined in the Servicemembers Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. No. 17-3). Matrix has also shown with specificity how it calculated the amount of the judgment. (Dkt. No. 18 and attachments).

The Court has considered the *Chamberlain* factors and finds that the prejudice to Matrix resulting from Laurent's breach of his contractual obligations, and the apparent absence of a litigable defense for Laurent weigh in favor of the Court granting default judgment. In addition, Laurent's default was a result of his culpable conduct as evidenced by his failure to respond to the Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5 (D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint). Accordingly, default judgment is appropriate.

### B. Attorney's Fees and Costs

Title 5 of the Virgin Islands Code, Section 541(b), governs the award of attorney's fees in the Virgin Islands. The statute states, in pertinent part: "The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties . . . ." 5 V.I.C. § 541(b).

Under both the terms of the Note and Mortgage, the Bank may recover "reasonable" attorney's fees. (Dkt. No. 18-1, ¶ 6(C); Dkt. No. 18-2, ¶ 18). The Court will look to the body of case law interpreting 5 V.I.C. § 541(b) for guidance in assessing what attorney's fees may be "reasonable." *Flagstar Bank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013).

"To determine a fair and reasonable award of attorneys' fees [under § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10.

First, with regard to the hourly rate, Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). Matrix's Attorney,

7

A.J. Stone, III, a senior associate at BoltNagi, PC, provided affirmations from three Virgin Islands attorneys who aver that the typical hourly rate for partners at Virgin Islands law firms—who have over fifteen years of experience—is between $225.00 to $335.00 per hour. (Dkt. Nos. 17-4, 17-5, 17-6). Two of the affirmations indicate that associates are paid $250.00 per hour. *See* Dkt. No. 17-4, ¶ 5 (noting that "the highest hourly billing rate for an associate attorney [at the declarant's firm] is $250.00/hr."); Dkt. No. 17-6 (stating that the typical associate attorney rate for foreclosure work is $250.00 per hour).

The billing records, spanning from August 14, 2014 through September 22, 2015, show that Attorneys Stone and Adam Marinelli, another associate at the firm, billed $250.00 per hour. Based on the documentation provided, the Court concludes that the $250.00 per hour rate charged by Attorneys Stone and Marinelli is reasonable and falls within the scope of rates for such services for comparable attorneys.

Matrix also seeks reimbursement for 1.5 hours of work performed by paralegal Gynah Guishard, who billed at the rate of $125.00 per hour, totaling $187.50. (Dkt. No. 19). In its Memorandum, Matrix quotes 20 Am. Jr. 2d Costs § 52 n.7 and accompanying text for the proposition that "[i]n appropriate cases, a request or award of attorney's fees may include compensation for separately billed legal services performed by a paralegal, legal assistant, or law clerk; an award of such fees is limited to charges for work performed that would otherwise have been required to be performed by a licensed attorney at a higher rate." (Dkt. No. 17 at 13). It also cites 73 A.L.R. 4th 938 § II(A)(3), which found that a majority of state jurisdictions have approved the inclusion of paralegal work as part of attorney fee awards, and notes that this Court has awarded fees for paralegals in the past. *Id.* Matrix argues that, to provide efficient and cost effective legal services, paralegals performed work that would otherwise have been performed by a licensed attorney at a higher rate. *Id*. at 16.

The Court recognizes that work performed by paralegals that could otherwise have been performed by a licensed attorney at a higher rate is potentially more cost effective and efficient. As Matrix notes, the Court also recognizes that, on occasions in the past, it has awarded attorney's fees for paralegal services. *See* Dkt. No. 17 at 13. However, the issue of attorney's fees is one of local law and this Court must, therefore, be guided by the interpretation of 5 V.I.C. § 541 by the local courts in determining whether certain types of fees are allowable. In this regard, the local courts have not given a clear indication that such fees are allowable. *See, e.g., Mahabir v. Heirs of George*, 2014 WL 1392954, at *1 (V.I. Super. Ct. Apr. 4, 2014) ("Defendant has provided no argument or case law demonstrating that 5 V.I.C. § 541(b) stands for the proposition that a prevailing party may obtain law clerk or paralegal fees as part of its award of attorney's fees. Other courts in the Virgin Islands have denied similar fees on this basis."); *Chapa v. Sepe*, 2013 WL 8609242, at *1 (V.I. Super. Ct. June 3, 2013) (same); *but cf. Creative Minds, LLC v. Reef Broadcasting, Inc.*, 2014 WL 4908588, at *2 (V.I. Super. Ct. Sept. 24, 2014) (stating that compensation for work performed by paralegals is reduced as normal overhead costs associated with running a business). Accordingly, the Court will reduce the award of attorney's fees by $187.50.

With regard to the reasonableness of the time expended, Matrix seeks compensation for 10.25 hours of work billed in this matter (excluding paralegal time). This amount of time falls within the range of time requested to be compensated in run-of-the-mill default judgment debt and foreclosure cases. *See, e.g., Bank of America v. Deshazer*, 2014 WL 7450487, at *5 (D.V.I. Dec. 30, 2014) (awarding $3,645.00 in attorney's fees for 14.55 hours of work); *Flagstar Bank FSB v. Rivers,* No. 12-cv-93, (D.V.I. Mar. 18, 2014) (awarding $2,107.50 in attorney's fees for 10.00 hours of work). The Court will therefore provide compensation for 10.25 hours of work billed and award $2,562.50 in attorney's fees.

Matrix also seeks reimbursement of $808.49 for "additional charges," representing title search, filing, recording, and process server fees, as well as certified mail and messenger service fees. (Dkt. No. 19-1).

The Mortgage provides that the Bank is "entitled to collect all expenses incurred" in pursuing foreclosure remedies "including, but not limited to, reasonable attorneys' fees and costs of court." (Dkt. No.18-2, ¶ 18). Because in this regard the Mortgage is "governed by . . . the law of the jurisdiction in which the Property is located," *id.* ¶ 14, the Court will look to Virgin Islands law for guidance in determining appropriate costs and expenses.

Title 5, Section 541(a) defines what costs are "allowed in a civil action."[1] "Expenses" are not defined by statute, nor are they defined in the Mortgage or other loan documents.[2]

In order for costs to be reimbursed, they must be reasonable. *See Creative Minds, LLC,* 2014 WL 4908588, at *1 (opining that prevailing party in civil action may "recover reasonable costs and attorney's fees" under statute). Similarly, in order for expenses (under the contract) to be reimbursed, they must also be reasonable. *See Rainey v. Hermon*, 2011 WL 4738534, at *6 (V.I. Oct. 6, 2011) (enforcing the terms of a contract, even for legal fees and administrative expenses, "unless the fee is unreasonable."); Rule 211.1.5 of the Virgin Islands Rules of Professional Conduct, adopted by the Supreme Court of the Virgin Islands, effective February 1, 2011 (providing that fees and expenses awarded in the Virgin Islands must be "reasonable").

---

[1] The costs allowed under Virgin Islands law are: "(1) Fees of officers, witnesses, and jurors; (2) Necessary expenses of taking depositions which were reasonably necessary in the action; (3) Expenses of publication of the summons or notices, and the postage when they are served by mail; (4) Compensation of a master as provided in Rule 53 of the Federal Rules of Civil Procedure; (5) Necessary expenses of copying any public record, book, or document used as evidence on the trial; and (6) Attorney's fees as provided in subsection (b) of this section." 5 V.I.C. § 541(a).

[2] The Supreme Court of the Virgin Islands has opined that costs and expenses do not cover the same outlays of funds in a case. *Terrell v. Coral World,* 55 V.I. 580, 591 n.14, 2011 WL 3492575 (V.I. July 20, 2011).

In view of the foregoing, the Court will look to Virgin Islands case law for guidance on what costs and expenses are "reasonable" and therefore allowed. Although Plaintiff has requested reimbursement for "additional charges," none of the items fit within the statutory definition of "costs." Rather, the items are properly considered expenses under the contract.

The Court finds that expenses related to title search, filing, recording, and process server fees are reasonable under the contract and will be allowed. *See, e.g.*, *Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, 46 V.I. 447, 2004 WL 3037953 at *9–*10 (D.V.I. Dec. 31, 2004) (finding filing fees, process service fees, transcript purchase fees, witness fees, and travel expenses to be "reasonable expenses which are normally charged paying clients."). The Court will thus award $727.00 in expenses.

On the other hand, it is well-established that "overhead costs," such as postage, are not compensable under § 541. *Creative Minds, LLC v. Reef Broadcasting, Inc.,* 2014 WL 4908588, at *1 (V.I. Super. Sept. 24, 2014). Neither are messenger service fees. *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *2 (D.V.I. Dec. 20, 2007).[3] Under this case law, the Court finds Matrix's request for $81.49 in postage and messenger service fees non-compensable, and will disallow those expenses.

## IV. CONCLUSION

Matrix has satisfied the requirements necessary for a default judgment against Defendant Conrad Laurent. Accordingly, Matrix's Motion for Default Judgment (Dkt. No. 16) on its debt and foreclosure causes of action will be granted.

---

[3] Matrix does not indicate that the item sent by messenger service and seaplane delivery was to assist in service of the Summons and Complaint, which would have been a cost compensable under § 541(a)(3).

In addition, the Court will award $2,562.50 in attorney's fees and $727.00 in expenses, for a total award of $3,289.50 in attorney's fees and expenses through September 22, 2015.

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: May 11, 2016                                _____/s/_____
                                                  WILMA A. LEWIS
                                                  Chief Judge